UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

*******************************************
| |  * |  |
|---|---|---|
| JERRY DEBORD, Individually and on behalf of Others Similarly Situated, | * * * | |
| Plaintiff | * * | NO. 7:17-CV-215-WDC |
| versus | * * | JUDGE WALTER D. COUNTS III |
| TEXAS CES, INC., and TEXAS CES, INC., d/b/a FELDERHOFF BROTHERS DRILLING SERVICES, | * * * * | |
| Defendants | * * | |

*******************************************

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Jerry DeBord ("DeBord") and Defendant SPN Well Services, Inc., f/k/a Texas CES, Inc. and d/b/a Texas CES and Felderhoff Brothers Drilling, incorrectly named as Texas CES, Inc. and Texas CES, Inc., d/b/a Felderhoff Brothers Drilling Company ("Defendant") (collectively, "the Parties") file this Joint Motion for Approval of Settlement. In support thereof, the Parties respectfully show the Court as follows:

### I.   INTRODUCTION

The Parties have reached a settlement of a pending dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA").

DeBord filed this lawsuit as a FLSA collective action on November 1, 2017. (Dkt. No. 1). During the relevant time period, DeBord was initially employed as a non-exempt Derrick Hand and later as an exempt Health, Safety, Environmental Coordinator and Safety Representative ("HSE Coordinator") by Felderhoff Brothers Drilling ("Felderhoff"), a drilling contractor located

in Gainesville, Texas.  During the relevant time period, Felderhoff was a stand-alone business unit affiliated with Texas CES, Inc., now known as SPN Well Services, Inc.  As HSE Coordinator, DeBord oversaw the safety of drilling operations and did not work on a drilling crew or perform any manual work in the field.  DeBord was tasked with traveling from Odessa, Texas to assigned rigs to manage safety programs, conduct training and safety meetings, perform rig inspections, and issue action items and correction notices.

DeBord alleged that he and other similarly situated HSE employees were misclassified as exempt employees who regularly worked more than 40 hours per week, but were not paid one and one-half times their regular rate of pay for the hours that they worked over 40.  DeBord also alleged that, during the time he was employed as a non-exempt Derrick Hand, Defendant did not include the bonuses of DeBord and other similarly situated employees into their regular rate when calculating overtime pay.  Defendant denies these allegations.

On March 13, 2018, DeBord moved for conditional certification and for court-ordered distribution of notice, seeking conditional certification of the following collective: "all persons employed by Defendants as Salaried Supervisors and/or Salaried Coordinators at any time since November 1, 2014."  (Dkt. Nos. 12 and 13). On August 27, 2018, the Court denied DeBord's Motion for Conditional Certification.  (Dkt. No. 34).

On September 18, 2018, by Text Order, the Court ordered DeBord to file his Amended Motion for Conditional Certification on or before October 18, 2018.  DeBord did not file an Amended Motion on or before October 18, 2018 and, as a result, this action proceeded as a single-plaintiff FLSA case. On November 5, 2018, the Court issued a Scheduling Order setting DeBord's claims for trial on January 6, 2020.  (Dkt. No. 38).  As part of the Scheduling Order, the Court

required the parties to submit a Joint ADR Report that contemplated the parties engaging in resolution discussions.

Thereafter, in December 2018 and January 2019, the Parties engaged in informal settlement negotiations. The Parties submitted a Joint ADR Report on December 21, 2019 and, shortly thereafter, agreed to a resolution of DeBord's claims. (Dkt. No. 39). On January 22, 2019, the Parties informed the Court that they had reached an agreement to resolve DeBord's claims. (Dkt. No. 40). On January 24, 2019, the Court entered an Order Closing the Case, which mandated that the Parties file dismissal paperwork within 60 days of the date of the Order, on or before March 25, 2019. (Dkt. No. 41).

The Parties now request that the Court approve this settlement. The final terms of the settlement are reflected in the settlement agreement, which was previously filed under seal. (Dkt. No. 42).

## II.     ARGUMENT AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for alleged unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Because the FLSA "makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay." *Id.* "Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, most courts recognize only two (2) valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores*, 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as res judicata to bar a federal FLSA suit). Settlements in the context of litigation, where there are *bona fide* issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute," are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Foods*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, district courts "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D.Tex. May 7, 2008); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel).

The Parties agree the settlement agreement previously filed under seal is fair, reasonable and represents a reasonable compromise of the disputed issues in this case.

### A. The terms of the settlement provide for appropriate compensation for the claims raised in the lawsuit and are the result of a *bona fide* dispute.

The Parties' settlement is fair and reasonable because it provides DeBord with a certain recovery while facing significant risks from future litigation. Additionally, the recovery provides compensation to DeBord's Counsel for attorneys' fees and costs. *See* Dkt. No. 42, "Confidential Settlement Agreement and Release."

The recovery reached in the settlement agreement is significant given that the Parties disagreed over the merits of the case. The Parties disagreed significantly over the number of hours DeBord worked, as well as whether DeBord could satisfy his burden to demonstrate that Defendant acted willfully and whether Defendant might succeed on their exemption defense(s), which in turn would affect whether DeBord could recover damages for two (2) years or three (3) years prior to the filing of the Complaint, or at all. *See* 29 U.S.C. § 255.

Similarly, there were disputed issues as to whether Defendant could establish that its actions were done in good faith so as to call into question whether liquidated damages would be available. *Id.* Due to the directly conflicting factual allegations and differing views on the applicable law, DeBord believes that the amounts reflected in the settlement agreement are in his best interests. Because the Parties are represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for payment of the settlement amount, DeBord agrees to release Defendant from any and all claims under state or federal law that he may have occurring at any time prior to and including the date he executes the settlement agreement that in any way arise from, relate to, or are in any way connected with his employment

with Defendant and/or his separation from employment with Defendant. *See* Dkt. No. 42, "Confidential Settlement Agreement and Release."

In light of the foregoing, the current settlement before the Court is the result of a *bone fide* dispute. The Parties disputed liability in this case and only reached a compromise after extensive motion practice followed by two (2) months of settlement negotiations.

### B. The settlement is fair and reasonable in light of the uncertainty of the outcome.

The proposed settlement agreement is fair to DeBord because it provides for a settlement based upon the compensation that DeBord was paid with an estimate of the number of overtime hours that he worked. The settlement amount is based upon a reasonable estimate of overtime hours worked by DeBord in the event of a finding that DeBord was not an exempt employee. The settlement amount also takes into consideration the risk that DeBord would be found to be an exempt employee under the FLSA, in which case he would not receive any damages.

The settlement agreement sets forth that fifty percent (50%) of all payments constitute wages, subject to reporting on W-2 deductions for payroll taxes. Defendant will be responsible for the employer portion of all payroll taxes and withholdings. The Parties further agree that the remaining fifty percent (50%) constitutes payments for liquidated damages, prejudgment interest, penalties and/or other consideration for DeBord's release and will be reported on IRS Form 1099. *See* Dkt. No. 42, "Confidential Settlement Agreement and Release."

### C. The attorneys' fees sought are fair and reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). DeBord has a contingency agreement with his counsel. In evaluating a contingency fee award, the Court may look at the factors set forth in *Johnson v. Georgia Hwy.*

*Exp., Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974). The *Johnson* factors include the following of import in this case: (1) the time and labor required; (2) the novelty and difficulty of the questions posed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; and (10) awards in similar cases.

DeBord's Counsel expended time and effort in prosecuting this case.  DeBord's Counsel investigated the claims, filed extensive pleadings, including challenging a dispositive motion filed by Defendants[1] and filing a Motion for Conditional Certification, engaged in settlement negotiations with Defendants' Counsel, addressed issues with regard to the collective action claims, and performed other work.

Second, the separately negotiated, agreed contingency fee in the agreement between DeBord and DeBord's Counsel provides for a contingency fee of 40% of the gross settlement amount, which is in line with Fifth Circuit precedent. *See, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

Furthermore, the legal theories involved required expertise in the wage and hour field.  Other attorneys may not have understood the nuanced arguments asserted and not have been able to discern whether DeBord even had viable claims.  Thus, the work of DeBord's Counsel provided a significant benefit to DeBord.

---

[1] On November 22, 2017, Defendants filed a Motion to Dismiss DeBord's Class Allegations.  (Dkt. No. 6).  On April 3, 2018, the Court entered an Order Denying Defendants' Motion to Dismiss.  (Dkt. No. 27).

Moreover, the settlement here was negotiated by attorneys who have been prosecuting similar collective claims for many years. DeBord's Counsel has considerable experience in prosecuting and settling federal and state wage and hour claims previously, and, in this case, was particularly well informed as to the facts and circumstances of the litigation. DeBord's Counsel has served as lead counsel in numerous large-scale wage and hour class/collective actions in this district and across the country. *See Markos George et al. v. Go Frac, LLC et al.*, SA-15-cv-943-XR (W. D. Tex.) (over 250 plaintiffs); *Roche et al. v. S-3 Pump Service, Inc., et al.*, 5:15-cv-268-XR (W. D. Tex.); *Craig Lyons, et al. v. ConAgra*, 4:12-cv-245-JM (E. D. of Ark.) (over 700 plaintiffs); *MKeyli Cruthis, et al. v. Visions*, et al., 4:12-cv-244 (KGB) (E. D. of Ark.); *James Finley v. Universal Pressure Pumping, Inc.*, SA:12-ca-0654 (OG) (W. D. of Tex.); and many others.

Finally, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Defendant vigorously contested DeBord's claims and denied that DeBord was improperly paid, underpaid, or that any alleged damages are owed, even filing a motion to dismiss and opposing DeBord's Motion for Conditional Certification.

Had this case not settled, DeBord's Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, DeBord was at great risk for non-payment. This risk of non-payment strongly supports the amount requested here. For these reasons, DeBord believes a fee of 40% is reasonable and necessary in this case.

D. **The settlement should be approved by the Court.**

A strong presumption exists in favor of a settlement's fairness. *Parker v. Anderson*, 667 F.3d 1201, 1209 (5th Cir. 1982); *Cotton*, 559 F.2d at 1331. Settlements are "highly favored" and "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). Absent fraud or collusion, trial courts should be hesitant to substitute their own judgment for the judgment of counsel in arriving at a settlement. *Cotton*, 559 F.2d at 1330.

Here, the terms of the settlement have been approved by DeBord, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims asserted in this lawsuit.

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. DeBord's counsel has significant experience in FLSA matters. *See* cases cited, *supra*. Likewise, Defendant's counsel has defended numerous large-scale wage and hour class and collective actions. *See, e.g., Allen v. Coil Tubing Services, LLC*, 846 F. Supp.2d 678 (S.D. Tex. 2012), aff'd, 755 F.3d 279 (2014) (obtained dismissal of significant portion of case pursuant to Motor Carrier Act exemption to FLSA); *Garza v. Smith International, Inc.*, 17 W & H Cases 2d 764 (S.D. Tex. 2011) (obtained summary judgment for client applying Motor Carrier Act exemption to defeat action for overtime); *Dunkel v. Warrior Energy Services Corp.*, 304 F.R.D.

193 (W.D. Pa. 2014) (denying Plaintiffs' motion for a nationwide collective action); *Naicker v. Warrior Energy Services, Inc.*, 2015 WL 1642209 (W.D. Pa. Apr. 19, 2015) (limiting nationwide hybrid action to single facility in Pennsylvania). Because the Parties are represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

After the Parties reached an agreement on the settlement, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as thorough negotiations. All that said, there can be no question that this settlement agreement represents fair value for the Plaintiff. Plaintiff will receive back wages and liquidated damages under federal law without the risk or expense of trial.

The Parties respectfully request that the Court decide and approve this settlement on the briefs, without the necessity of a hearing. In the event the Court has questions, the Parties are prepared to participate in a conference call with the Court to address any unresolved issues.

### III.     CONCLUSION

Accordingly, the Parties respectfully request that the Court enter an order approving the Parties' settlement agreement.

| | |
|---|---|
| *Josh Sanford w/ permission*_____ <br> Josh Sanford <br> State Bar No. 24077858 <br> SANFORD LAW FIRM, PLLC <br> 650 S. Shackleford Road, Suite 411 <br> Little Rock, Arkansas 72211 <br> (501) 221-0088 – Telephone <br> (888) 787-2040 – Facsimile <br> josh@sanfordlawfirm.com <br><br> ATTORNEYS FOR PLAINTIFF | *Mark A. McNitzky*_____ <br> Andrew P. Burnside <br> State Bar No. 24061200 <br> OGLETREE, DEAKINS, NASH, <br> SMOAK & STEWART, P.C. <br> One Shell Square <br> 701 Poydras St., Suite 3500 <br> New Orleans, Louisiana 70139 <br> (504) 648-2609 – Telephone <br> (504) 648-3859 – Facsimile <br> drew.burnside@ogletreedeakins.com <br><br> Mark A. McNitzky <br> State Bar No. 24065730 <br> OGLETREE, DEAKINS, NASH, <br> SMOAK & STEWART, P.C. <br> 112 East Pecan Street <br> 2700 Weston Centre <br> San Antonio, Texas 78205 <br> (210) 354-1300 – Telephone <br> mark.mcnitzky@ogletreedeakins.com <br><br> Harper Estes, TX Bar No. 00000083 <br> Lisa K. Hooper, TX Bar No. 24047282 <br> Lynch, Chappell & Alsup <br> A Professional Corporation <br> 300 North Marienfeld, Suite 700 <br> Midland, Texas 79701 <br> Telephone: (432) 683.3351 <br> Email: hestes@lcalawfirm.com <br> lhooper@lcalawfirm.com <br><br> ATTORNEYS FOR DEFENDANT |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2019, the foregoing document was electronically transmitted to the Clerk of the Court using the ECF system of filing. A Notice of Electronic Filing will be sent by operation of the ECF system to all counsel of record.

*/s/Mark A. McNitzky*
Andrew P. Burnside/Mark A. McNitzky

37810084.6
030979.000033